**LAW OFFICES OF SCOTT D. HUGHES**
Scott D. Hughes, Esq. (SBN CA 253611)
scott@scotthugheslaw.com
620 Newport Center Dr. Suite 1100
Newport Beach, CA 92660
Tel: (714) 987-2671
Fax: (714) 845-0030

**Alford Law PLLC**
Elliot Alford, Esq. (SBN 029433)
3 N. Leroux St., Suite 200
Flagstaff, AZ 86001
Tel: (928) 607-1710
Fax: (918) 233-8687

*Attorneys for Plaintiff*
MARIO RENE HIDALGO LOPEZ an individual,
and as successor-in-interest to decedent,
RAQUEL EVANGELINA CALDERON DE HIDALGO

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA – PHOENIX DIVISION

| | |
|---|---|
| MARIO RENE HIDALGO LOPEZ an individual, and as successor in interest to decedent, RAQUEL EVANGELINA CALDERON DE HIDALGO,<br><br>Plaintiffs,<br><br>vs.<br><br>Defendants,<br><br>UNITED STATES OF AMERICA; CORECIVIC, a private entity; and DOES 1 through 10, inclusive. | **Case No.  2:19-cv-04332-ROS-CDB**<br><br>[*Honorable Roslyn O. Silver*]<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. FTCA - Negligence, Negligent Training, Negligent Conduct, Negligent Denial of Medical Care and Negligent Supervision -Wrongful Death<br>2. FTCA - Ratification<br>3. Negligence, Negligent Training, Negligent Conduct, Negligent Denial of Medical Care and Negligent Supervision -Wrongful Death<br>4. Negligent Conditions of Confinement and Denial of Medical Care<br><br>**DEMAND FOR JURY TRIAL** |

-1-

## COMPLAINT FOR DAMAGES

Plaintiff MARIO RENE HIDALGO LOPEZ, individually and as a successor-in-interest to Decedent, RAQUEL EVANGELINA CALDERON DE HIDALGO ("Plaintiff") for his Complaint against Defendant CORECIVIC, a private entity ("Defendant"); and DOES 1-10, inclusive, and allege as follows:

## JURISDICTION AND VENUE

1.      This court has jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1332(a)(2) (Diversity) and 1346(b)(1) (United States as Defendant).  This Court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant CORECIVIC resides in this Judicial District.

3.      Plaintiff served government claims pursuant to 28 Code of Federal Regulations 14.2, et seq. on November 21, 2018.  Those claims were denied by operation of law.  This complaint is timely filed against all defendants.

## INTRODUCTION

4.      This action seeks compensatory damages from Defendants for violating various rights under State law in connection with the death of RAQUEL EVANGELINA CALDERON DE HIDALGO, while in the custody of U.S. Immigrations and Customs Enforcement (ICE) at Eloy Detention Center, owned and operated by CORECIVIC, a private detention facility ("CoreCivic").  Plaintiff's standing to bring this action is vested on A.R.S. Section 12-612.  Plaintiff MARIO RENE HIDALGO LOPEZ, an individual, and as successor-in-interest to decedent, RAQUEL EVANGELINA CALDERON DE HIDALGO, brings this action in his individual capacity for wrongful death damages and in his capacity as successor-in-interest to his wife, RAQUEL EVANGELINA CALDERON DE HIDALGO, for

wrongful death, including survival damages for MS. CALDERON DE HIDALGO's loss of life, loss of enjoyment of life, pre-death pain and suffering, and funeral and burial expenses and punitive damages.

**PARTIES**

5.     At all relevant times, RAQUEL EVANGELINA CALDERON DE HIDALGO ("DECEDENT") was an individual residing in Guatemala.

6.     Plaintiff, MARIO RENE HIDALGO LOPEZ ("PLAINTIFF") is an individual residing in California, and is the widower of Decedent RAQUEL EVANGELINA CALDERON DE HIDALGO.  PLAINTIFF sues both in his individual capacity as the widower of DECEDENT, and in a representative capacity as successor-in-interest to DECEDENT.  PLAINTIFF seeks both survival and wrongful death damages under federal and state law.  PLAINTIFF was financially dependent upon DECEDENT.

7.     At all relevant times, defendant United States of America ("United States") detains individuals who enter the country without inspection.  The United States, through its agency, U.S. Immigration and Customs Enforcement ("ICE"), contracts with private corporations to house immigration detainees.  ICE Health Services Corps is an agency of Defendant United States operating at Eloy Detention Center and providing health care treatment for immigrant detainees.  Defendant United States is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies.  At all relevant times, Defendant United States was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the detention center and its employees and agents complied with the laws of the United States and of the States in which it operates and resides.

8.     At all relevant times, Defendant CORECIVIC, formerly the Corrections Corporation of America, was a private business entity operating several facilities in

FIRST AMENDED COMPLAINT FOR DAMAGES

the District of Arizona.  Defendant CORECIVIC owns and operates the Eloy Detention Center in Eloy, Pinal County, Arizona housing immigration detainees under a contract with ICE.  CORECIVIC is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies.  At all relevant times, CORECIVIC was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the detention center and its employees and agents complied with the laws of the United States and of the States in which it operates and resides.

9.    Defendants DOES 1-10 are corrections workers, medical services employees, CORECIVIC personnel, and / or policymakers for CORECIVIC.  These individuals were acting under color of law in the course and scope of their employment with CORECIVIC.  Plaintiff is currently unaware of the true identities of these Defendants, but will amend the complaint to name them with their true names as soon they are ascertained.   Each of these Defendants is responsible in some manner for the conduct and liabilities alleged herein.

10.    At all relevant times, CORECIVIC was the employer of Defendants DOES 1-10, inclusive.

11.    At all times mentioned herein, each and every CORECIVIC defendant was the agent of each and every other CORECIVIC defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every CORECIVIC defendant.

12.    In doing the acts, and failing and/or omitting to act as hereinafter described, Defendants were acting on the implied and actual permission and consent of Defendants CORECIVIC, and DOES 1 -10, who are supervisory and policymaking personnel.

-4-
FIRST AMENDED COMPLAINT FOR DAMAGES

13.    At all times relevant to the Complaint, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and/or employment of each and every Defendant.

14.    All individually named Defendant DOES are sued in their individual capacities.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

15.    Plaintiffs repeat and re-allege each and every foregoing allegation with the same force and effect as if fully set forth herein.

16.    On or about November 18, 2016, DECEDENT, RAQUEL CALDERON DE HIDALGO (age 36) was arrested near Robles Junction, Arizona, by the U.S. Border Patrol.

17.    On or about November 23, 2016, DECEDENT was transferred to ICE custody at Eloy Detention Center, owned and operated by CORECIVIC. DECEDENT was suffering from injuries and in need of proper nourishment and medical treatment.  The United States and CORECIVIC failed to identify her need for medical attention or give her any medical treatment whatsoever.  Defendants left DECEDENT in her cell where she experienced severe dehydration, malnutrition, and seizures.

18.    On or about November 27, 2016, DECEDENT collapsed and experienced at least two seizures and cardiac arrest.  DECEDENT was eventually transported to Banner Casa Grande Hospital emergency department.

19.    The Emergency Physician noted that DECEDENT'S cardiac arrest was "very much in question" because she was so young and presumptively had no cardiac history.  Resuscitative efforts were performed, but DECEDENT did not regain a pulse, and was pronounced dead shortly thereafter.

20.    DECEDENT died while in ICE custody on November 27, 2016.

FIRST AMENDED COMPLAINT FOR DAMAGES

21. An autopsy was performed. DECEDENT'S death certificate listed her immediate cause of death as Pulmonary Emboli due to, or as a consequence of, deep vein thrombosis and the manner of death was accidental.

22. The United States and CORECIVIC knew that detainees must be properly fed, medically evaluated, and periodically checked for signs of medical trauma and emergency. Defendants United States, CORECIVIC, and their employees, agents, and assigns, knew that DECEDENT had not been properly fed or medically evaluated, and knew that DECEDENT was not being periodically checked on a sufficient basis. They also had actual or constructive knowledge that DECEDENT was exhausted from having journeyed through the desert, that she was confined to a cell in which she had no medical care, that she suffered severe injuries and that she was in immediate need of medical treatment. Despite their knowledge of DECEDENT's medical need and as a result of the United States and CORECIVIC'S failure to provide adequate medical care, United States and CORECIVIC failed to identify that DECEDENT was suffering from a severe medical emergency, and failed to timely summon medical aid and/or provide DECEDENT with medical aid. As a further result, DECEDENT's heart stopped and efforts to resuscitate her were untimely and therefore unsuccessful, leading to her death. Defendants United States and CORECIVIC are directly liable for the denial of medical care to DECEDENT and for their integral participation and failure to intervene in the denial of medical care to DECEDENT.

23. Pulmonary embolism and deep vein thrombosis can be caused by dehydration, and extended sitting and/or lying down. Following a harrowing journey through the desert, DECEDENT had been left in her cell without proper food, water, or medical care.

FIRST AMENDED COMPLAINT FOR DAMAGES

24. Through a series of acts and omissions, DEFENDANTS ignored DECEDENT'S medical needs, failed to observe her or check on her, and failed to administer medical care to her.

25. DEFENDANTS proximately caused DECEDENT'S death through their acts and omissions, including unreasonable and deliberately indifferent denial of medical care, unreasonable and deliberately indifferent conditions of confinement, and negligence.

26. DEFENDANTS acted, allowed others to act, omitted to take obligated actions, condoned, failed to prevent, or otherwise engaged in conduct that ultimately resulted in the wrongful death of DECEDENT.

27. Based on the applicable laws and regulations, Defendants had the duty to monitor and protect DECEDENT while she was in custody, and to ensure that she received necessary medical care.

28. According to the death certificate, DECEDENT suffered pulmonary embolism and deep vein thrombosis. Her death was preventable because her symptoms should have been observed by United States and CORECIVIC staff, who should have responded with proper medical treatment. Since DECEDENT died from pulmonary embolism and deep vein thrombosis, DEFENDANTS are either improperly trained to observe and note the symptoms of pulmonary embolism and deep vein thrombosis, and that failure was a proximate cause of the DECEDENT's death, or, DEFENDANTS failed to make adequate observations of the DECEDENT's symptoms, provide adequate medical care to treat those symptoms, and in so doing, proximately caused the DECEDENT's death.

29. The failure of DEFENDANTS to timely report patients' symptoms and failure to medically evaluate DECEDENT caused the DECEDENT pre-death pain and suffering and were each a substantial factor in causing the DECEDENT'S death.

FIRST AMENDED COMPLAINT FOR DAMAGES

30.    The failure to preform timely and adequate checks on the DECEDENT while she was detained caused DECEDENT to suffer pre-death pain and suffering and was a proximate cause of the DECEDENT'S death.

31.    The placement of the DECEDENT in her detainee cell, without any proper prior or follow-up medical evaluation, and without any legitimate penal interest, violated DECEDENT'S human rights, caused her to suffer significant pre-death pain and suffering, and was a proximate cause of the DECEDENT'S death.

32.    United States and CORECIVIC knew or should have known that detainees who recently journeyed through the desert required immediate medical assessments, as well as proper food and water, but they both failed to take measures to ensure that United States and CORECIVIC staff were properly trained to perform proper medical evaluations.  Defendants United States and CORECIVIC'S failure to take any such measures to ensure the health and safety of the detainees resulted in the DECEDENT being left to die, and in this case,  violated DECEDENT's human rights and were a substantial factor in causing her death.

33.    By failing to discipline, retrain, or terminate any of the involved United States or CORECIVIC staff, Defendants United States and CORECIVIC also ratified the failure to medically evaluate and treat DECEDENT causing her to suffer injuries and death.

34.    United States and CORECIVIC also knew or should have known that the failure to medically assess, care, and treat DECEDENT in this case was illegal and violated United States policy, but each failed to discipline, terminate, or retrain the employees responsible.  In so failing to act, United States and CORECIVIC ratified their employees' illegal and improper conduct in medically neglecting DECEDENT.

35.    United States and CORECIVIC also knew or should have known that their employees have, or had at the time of this incident, inadequate training regarding persons who are in need of medical care, and/or experiencing a medical emergency.

Despite this knowledge, United States and CORECIVIC failed to take measures to ensure that Eloy Detention Center medical or custodial staff were adequately trained on the medical care and treatment of detainees.  This failure was the moving force being the violation of DECEDENT'S human rights and a substantial factor in causing the death of DECEDENT.

36.    United States and CORECIVIC further knew or should have known that Eloy Detention Center staff were routinely failing to make sufficient safety checks on detainees, as they failed to do in the case of DECEDENT; and that United States or CORECIVIC staff were not medically evaluating detainees during their confinement. Despite this knowledge, United States and CORECIVIC failed to properly train Eloy Detention Center staff on United States and CORECIVIC policies and the law, with respect to providing medical care to detainees, detainees' rights to medical care, and documenting medical care for inmates housed in the cells.  Their failure to train and their ratification of illegal and unconstitutional practices were the moving force behind the violation of DECEDENT's human rights and a substantial factor in causing her death.

## FIRST CLAIM FOR RELIEF
### FTCA - Negligence

**(Negligent Training, Negligent Conduct, Negligent Denial of Medical Care and Negligent Supervision)**

**(Wrongful Death)**

(MARIO RENE HIDALGO LOPEZ an individual, and as successor in interest to decedent, RAQUEL EVANGELINA CALDERON DE HIDALGO, Plaintiffs, vs. Defendant United States)

37.    Plaintiffs repeat and re-allege each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

38.    The actions and inactions of Defendants were negligent and reckless, including but not limited to:

a)    the negligent failure to medically evaluate Decedent while in ICE Custody at Eloy Detention Center despite complaints of injury;

b)    the negligent failure to perform checks and the performance of negligent checks on DECEDENT while she was in ICE Custody at Eloy Detention Center;

c)    the negligent documentation of the DECEDENT'S medical status and well-being while she was in ICE Custody at Eloy Detention Center;

d)    the negligent failure to render timely medical aid to the Decedent when she was in a state of medical emergency and distress;

e)    the negligent failure to observe, document, and treat her symptoms of dehydration, seizures, leg injury, deep vein thrombosis and pulmonary embolism, which would have prevented her death;

f)    the negligent supervision of the staff responsible for ensuring the decedent's safety and care during her confinement at Eloy Detention Center; and

g)    the negligent training and failure to train Eloy Detention Center custodial and medical staff on the issues and topics set forth above in this complaint.

39.    As a direct and proximate result of Defendant United States's negligence, DECEDENT died and Plaintiff was deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of his natural life.  Plaintiff is also claiming funeral and burial expenses and a loss of financial support.

40.    Plaintiff seeks wrongful death and survival damages under this claim. Plaintiff was financially dependent on DECEDENT.

## SECOND CLAIM FOR RELIEF

### FTCA - Ratification

(By Plaintiff MARIO RENE HIDALGO LOPEZ an individual, and as successor in

FIRST AMENDED COMPLAINT FOR DAMAGES

interest to decedent, RAQUEL EVANGELINA CALDERON DE HIDALGO, Plaintiffs vs. Defendant United States)

41.    Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

42.    At all times relevant to this complaint, Defendant UNITED STATES ratified and acquiesced in the acts and violations committed by the co-Defendants as alleged above, denying medical care to DECEDENT and perpetrating the DECEDENT'S unlawful conditions of confinement.

43.    Although the acts and omission of the Defendants in this case were known by Defendants, including the denial of medical care to DECEDENT, no re-training or disciplinary measures have been taken concerning any of the Defendants. Moreover, upon information and belief, Defendants have approved of the Defendants' actions, either expressly or implicitly by failing to take any remedial action in response.

44.    By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT'S pre-death pain and suffering, loss of enjoyment of life, and death.

45.    Plaintiff brings this claim as a successor in interest to DECEDENT, and seeks both survival and wrongful death damages under this claim.  Plaintiff seeks wrongful death damages under this claim in his individual capacity.

**THIRD CLAIM FOR RELIEF**

-11-
FIRST AMENDED COMPLAINT FOR DAMAGES

**Negligence**

**(Negligent Training, Negligent Conduct, Negligent Denial of Medical Care and Negligent Supervision)**

**(Wrongful Death)**

(MARIO RENE HIDALGO LOPEZ an individual, and as successor in interest to decedent, RAQUEL EVANGELINA CALDERON DE HIDALGO, Plaintiffs, vs. Defendant CORECIVIC)

46.   Plaintiffs repeat and re-allege each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

47.   The actions and inactions of Defendant CoreCivic were negligent and reckless, including but not limited to:

a)   the negligent failure to medically evaluate Decedent while in ICE Custody at Eloy Detention Center, despite her complaints of injury;

b)   the negligent failure to perform routine checks and the performance of negligent checks on Decedent while she was in ICE Custody at Eloy Detention Center;

c)   the negligent documentation of the DECEDENT'S medical status and well-being while she was in ICE Custody at Eloy Detention Center;

d)   the negligent failure to render timely medical aid to the Decedent when she was in a state of medical emergency and distress;

e)   the negligent failure to observe, document, and treat DECEDENT'S symptoms of dehydration, seizures, leg injury, deep vein thrombosis and pulmonary embolism, which would have prevented her death;

f)   the negligent supervision of the staff responsible for ensuring the decedent's safety and care during her confinement at Eloy Detention Center; and

g)   the negligent training and failure to train Eloy Detention Center custodial and medical staff on the issues and topics set forth above in this complaint.

FIRST AMENDED COMPLAINT FOR DAMAGES

48.    Plaintiff was financially dependent on DECEDENT.  As a direct and proximate result of Defendant CoreCivic's negligence, DECEDENT died and Plaintiff was deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of his natural life.  Plaintiff is also claiming funeral and burial expenses and a loss of financial support.

49.    The conduct of Defendant CoreCivic was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of the Plaintiff and DECEDENT, entitling the Plaintiff, individually and as successor-in-interests to DECEDENT, to an award of exemplary damages.

50.    Plaintiff seeks wrongful death and survival damages under this claim. Plaintiffs also seek costs, interest and attorneys' fees.

## FOURTH CLAIM FOR RELIEF

**Negligent Conditions of Confinement and Denial of Medical Care**

(MARIO RENE HIDALGO LOPEZ an individual, and as successor in interest to decedent, RAQUEL EVANGELINA CALDERON DE HIDALGO, Plaintiffs, vs. Defendants, CORECIVIC; and DOES 1 through 10, inclusive.)

51.    Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph with the same force and effect as if fully set forth herein.

52.    At the time of her death, DECEDENT was either an arrestee or a pretrial detainee. Defendants violated DECEDENT'S right to adequate medical care and to be free from punishment prior to conviction by: failing to have Decedent medically evaluated; failing to adequately check on her; failing to perform adequate checks (and in some instances, any checks) on her; failing to observe and note her signs and symptoms of her leg injuries, dehydration, seizures, pulmonary embolism, and deep vein thrombosis; failing to timely provide and summon medical aid when she was in a state of medical distress.

FIRST AMENDED COMPLAINT FOR DAMAGES

53.    As a result, DECEDENT suffered extreme the loss of her life and the loss of enjoyment of her life.  She also suffered a loss of earning capacity.

54.    Defendants are liable for DECEDENT'S injuries because they were an integral participant and/or because they failed to intervene to prevent the violations of DECEDENT'S rights.

55.    Plaintiff MARIO RENE HIDALGO LOPEZ brings this claim as successor-in-interest to the DECEDENT, and seeks survival damages for the violation of DECEDENT'S rights.

56.    Plaintiff also seeks costs, interest, and attorney fees under this claim.

57.    The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of the Plaintiff and DECEDENT, entitling the Plaintiff, individually and as successor-in-interests to DECEDENT, to an award of exemplary damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in his favor and against all Defendants as follows:

A.    For compensatory damages against all Defendants, including both survival damages and wrongful death damages under federal and state law, in an amount to be proven at trial;

B.    For loss of financial support;

C.    For funeral and burial expenses;

D.    For exemplary and punitive damages against CORECIVIC and DOES 1-10 in an amount to be proven at trial;

E.    For pre- and post-judgment interest at the maximum legal rate;

F.    For reasonable costs of this suit and attorneys' fees; and

-14-

FIRST AMENDED COMPLAINT FOR DAMAGES

G.     For such further other relief as the Court may deem just, proper, and appropriate.

Dated:  August 14, 2019                    **THE LAW OFFICES OF SCOTT D. HUGHES**


s/
Scott D. Hughes
*Attorneys for Plaintiff*

-15-
FIRST AMENDED COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated:  August 14, 2019          **THE LAW OFFICES OF SCOTT D. HUGHES**


s/
Scott D. Hughes
*Attorney for Plaintiff*