MICHAEL BAILEY
United States Attorney
District of Arizona

ANNE E. NELSON
Arizona State Bar No. 028069
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona  85004-4408
Telephone:  (602) 514-7500
Facsimile:  (602) 514-7760
E-Mail: Anne.Nelson@usdoj.gov
*Attorney for United States of America*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mario Rene Hidalgo Lopez; B.H.; and L.H., by and through her guardian ad litem, Mario Rene Hidalgo Lopez, individually and successors-in-interest to decedent, Raquel Evangelina Calderon de Hidalgo<br><br>Plaintiffs,<br><br>vs.<br><br>United States of America; CoreCivic, a private entity; InGenesis, Inc., a private entity; and Does 1 through 10, inclusive.<br><br>Defendant(s). | **Case No. 2:19-cv-04332-ROS-CDB**<br><br>**UNITED STATES' ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT** |

The United States of America, by and through its undersigned counsel, hereby responds to the numbered allegations in Plaintiffs' Third Amended Complaint.  Any allegation not specifically admitted is deemed denied.

## JURISDICTION AND VENUE

1.     This court has jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1332(a)(2) (Diversity) and 1346(b)(1) (United States as Defendant).  This Court has supplemental jurisdiction over Plaintiffs' state claims pursuant to 28 U.S.C. § 1367(a), because these claims are so related to the federal claims that they form part of the same case or controversy under

Article III of the United States Constitution.

**Response:** Plaintiffs' allegations in paragraph 1 are conclusory statements of jurisdiction to which no answer is required; to the extent they may be deemed allegations of fact, they are denied.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the Defendant CoreCivic resides in this Judicial District.

**Response:** Defendant lacks information sufficient to form a belief as to the truth of the allegation that Defendant CoreCivic resides in this judicial district, and therefore denies it on that basis. Defendant admits that the acts or omissions complained of occurred within the District of Arizona. Defendant admits that venue is appropriate in the District of Arizona.

3. Plaintiff Mario Hidalgo Lopez served government claims pursuant to 28 Code of Federal Regulations 14.2, *et seq.* on November 21, 2018. Those claims were denied by operation of law. This complaint is timely filed against all defendants.

**Response:** Defendant admits that Plaintiff Mario Hidalgo Lopez served form SF-95 on the Attorney General and the Department of Homeland Security. Defendant denies that those forms were served on November 21, 2018. Defendant lacks information sufficient to form a belief as to whether this complaint is timely filed against all defendants, and therefore denies it on that basis.

### INTRODUCTION

4. This action seeks compensatory damages from Defendants for violating various rights under State law in connection with the death of RAQUEL EVANGELINA CALDERON DE HIDALGO, while in the custody of U.S. Immigration and Customs Enforcement (ICE) at Eloy Detention Center, owned and operated by CORECIVIC, a private detention facility, with certain medical personnel employed by INGENESIS, a staffing company that contracts with ICE. Plaintiffs' standing to bring this action is vested on A.R.S. Section 12-612. Plaintiffs MARIO RENE HIDALGO LOPEZ, B.H., and L.H., individuals, and as successors-in-interest to decedent, RAQUEL EVANGELINA CALDERON DE

HIDALGO, bring this action in their individual capacity for wrongful death damages and in their capacity as successor-in-interest to their wife and mother, RAQUEL EVANGELINA CALDERON DE HIDALGO, for wrongful death, including survival damages for MS. CALDERON DE HIDALGO's loss of life, loss of enjoyment of life, pre-death pain and suffering, and funeral and burial expenses and punitive damages.

**Response:**    Defendant admits that this is an action for compensatory damages. The remainder of Plaintiffs' allegations in paragraph 4 are conclusory statements of jurisdiction to which no answer is required; to the extent they may be deemed allegations of fact, they are denied. Defendant denies any violation of any rights and any claims for damages.

### PARTIES

5.    At all relevant times, RAQUEL EVANGELINA CALDERON DE HIDALGO ("DECEDENT") was an individual residing in Guatemala.

**Response:**    Defendant lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 5, and therefore denies it on that basis.

6.    Plaintiff, MARIO RENE HIDALGO LOPEZ is an individual residing in California, and is the widower of Decedent RAQUEL EVANGELINA CALDERON DE HIDALGO.  Plaintiffs B.H. and L.H. are individuals residing in Guatemala and are the minor children of Decedent RAQUEL EVANGELINA CALDERON DE HIDALGO.  Plaintiffs sue both in their individual capacities as the widower and children of DECEDENT, and in a representative capacity as successors-in-interest to DECEDENT.  Plaintiffs seek both survival and wrongful death damages under federal and state law.  Plaintiffs were financially dependent upon DECEDENT.

**Response:**    Defendant lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 6, and therefore denies it on that basis.

7.    At all relevant times, defendant United States of America ("United States") detains individuals who enter the country without inspection.  The United States, through its agency, U.S. Immigration and Customs Enforcement ("ICE"), contracts with private

corporations to house immigration detainees. ICE Health Services Corps is an agency of Defendant United States operating at Eloy Detention Center and providing health care treatment for immigrant detainees. Defendant United States is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies. At all relevant times, Defendant United States was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the detention center and its employees and agents complied with the laws of the United States and of the States in which it operates and resides.

**Response:** Defendant admits that the U.S. Immigration and Customs Enforcement is (hereinafter "ICE") is a federal agency that contracts with private corporations to house detainees. The remaining allegations in paragraph 7 are vague, ambiguous, and conclusory, and Defendant denies them on that basis. Defendant affirmatively avers that Plaintiffs must specify which employee(s) of the federal government they assert committed the negligent actions or omissions that are the basis of their claims in order to state a claim upon which relief may be granted. *Adams v. United States*, 420 F.3d 1049, 1050 (9th. Cir. 2005); *Mathis v. United States*, No. CV-10-8157, 2011 WL 4352291, *1 (D. Ariz. Sept. 16, 2011).

8.    At all relevant times, Defendant CORECIVIC, formerly the Corrections Corporation of America, was a private business entity operating several facilities in the District of Arizona. Defendant CORECIVIC owns and operates the Eloy Detention Center in Eloy, Pinal County, Arizona housing immigration detainees under a contract with ICE. CORECIVIC is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies. At all relevant times, CORECIVIC was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the detention center and its employees and agents complied with the laws of the United States and of the States in which it operates and resides.

**Response:** Defendant admits that CORECIVIC is a private business entity operating the Eloy Detention Center in Eloy, Pinal County, Arizona, under a contract with

ICE.  The remaining allegations in paragraph 8 are vague, ambiguous, and conclusory, and Defendant denies them on that basis.

9.    At all relevant times, Defendant INGENESIS was a private Texas corporation, with its principal place of business in Texas, doing business in Pinal County, Arizona. Defendant INGENESIS contracts with ICE to provide staffing and support at medical clinics run by ICE Health Services Corps (IHSC), including the clinic at Eloy Detention Center. Defendant INGENESIS employed Registered Nurses (RNs) and Licensed Practical Nurses (LPNs) that were staffed at Eloy Detention Center.  At all relevant times, INGENESIS was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of its employees and agents complied with the laws of the United States and of the States in which it operates and resides.

**Response:**    Defendant admits that INGENESIS does business in Pinal County, Arizona.  Defendant admits IGENESIS contracts with ICE, and provided staffing in the Eloy Detention Center. Defendant admits IGENESIS employed Registered Nurses and Licensed Practical Nurses that were staffed at the Eloy Detention Center. The remaining allegations in paragraph 9 are vague, ambiguous, and conclusory, and Defendant denies them on that basis.

10.    Defendants DOES 1-10 are corrections workers, medical services employees, CORECIVIC personnel, and / or policymakers for CORECIVIC.  These individuals were acting under color of law in the course and scope of their employment with CORECIVIC. Plaintiffs are currently unaware of the true identities of these Defendants, but will amend the complaint to name them with their true names as soon they are ascertained.  Each of these Defendants is responsible in some manner for the conduct and liabilities alleged herein.

**Response:**    Defendant lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 10, and therefore denies it on that basis.

11.    At all relevant times, CORECIVIC and/or INGENESIS were the employers of DOES 1-10, inclusive.

**Response:**    Defendant lacks information sufficient to form a belief as to the truth of

- 5 -

the allegations in Paragraph 11, and therefore denies it on that basis.

12.    At all times mentioned herein, each and every CORECIVIC defendant was the agent of each and every other CORECIVIC defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every CORECIVIC defendant.

**Response:**    The allegations in paragraph 12 are vague and conclusory, and therefore do not require a response.  To the extent a response is required, Defendant denies for lack of information sufficient to form a belief as to the truth of the matter asserted.

13.    In doing the acts, and failing and/or omitting to act as hereinafter described, Defendants were acting on the implied and actual permission and consent of Defendants CORECIVIC and INGENESIS, and DOES 1-10, who are supervisory and policymaking personnel.

**Response:**    The allegations in paragraph 13 are vague and conclusory, and therefore do not require a response.  To the extent a response is required, Defendant denies for lack of information sufficient to form a belief as to the truth of the matter asserted.

14.    At all times relevant to the Complaint, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and/or employment of each and every Defendant.

**Response:**    The allegations in paragraph 14 are vague and conclusory, and therefore do not require a response.  To the extent a response is required, Defendant denies for lack of information sufficient to form a belief as to the truth of the matter asserted.

15.    All individual named Defendant DOES are sued in their individual capacities.

**Response:**    Defendant lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and therefore denies it on that basis.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

16.    Plaintiffs repeat and re-allege each and every foregoing allegation with the same force and effect as if fully set forth herein.

**Response:** Defendant hereby re-alleges and incorporates by this reference its responses to paragraphs 1 through 15 of the Complaint as if fully set forth herein.

- 6 -

17.    On or about November 17, 2016, DECEDENT, RAQUEL CALDERON DE HIDALGO (age 36) was arrested near Robles Junction, Arizona, by the U.S. Border Patrol.

**Response:**    Defendant Admits.

18.    On November 20, 2016, DECEDENT was sent to Banner University Medical Center and was diagnosed with an ankle sprain, soft tissue injury of her right knee and ankle, and a headache.  The physician gave DECEDENT instructions on how to care for her ankle, and a prescription for ibuprofen, and told DECEDENT to follow up with a primary care provider.

**Response:**    Defendant admits that Decedent was taken to Banner University Medical Center and was diagnosed with an ankle sprain, soft tissue injury of her right knee and ankle, and a headache.  Defendant admits that the medical records indicate that decedent was provided a prescription for acetaminophen and ibuprofen.  Defendant lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 18.

19.    On November 23, 2016, DECEDENT was transferred to ICE custody at Eloy Detention Center, owned and operated by CORECIVIC.  DECEDENT was suffering from injuries and in need of proper nourishment and medical treatment.  An IHSC RN, with translation provided by an INGENESIS LPN, conducted a medical pre-screening and a medical and mental health intake screening.  During the pre-screening the RN designated DECEDENT as "priority one (PRI-1)," meaning DECEDENT needed to be seen by a provider before being sent to housing.  The RN's determination was largely based on DECEDENT's emergency room paperwork from Banner University Medical Center.

**Response:** Defendant admits that Decedent was transferred to the Eloy Detention Center on November 23, 2016.  Defendant admits that a medical pre-screening was conducted for Decedent and that she was designated as PRI-1.  Defendant lacks information sufficient to form a belief as to the remaining allegations in paragraph 19, and therefore denies them on that basis.

20.    The subsequent medical and mental health intake screening resulted in DECEDENT being designated as "Physical Examination – Complex," meaning she required

a physical examination by a provider within twenty-four hours. The RN informed the clinic's Nurse Practitioner (NP) of DECEDENT's injuries, ailment, and vitals. The RN then scheduled DECEDENT's physical examination with a provider for two days later.

**Response:** Defendant lacks information sufficient to form a belief as to the allegations in paragraph 20, and therefore denies them on that basis.

21. That afternoon, DECEDENT and nine others were transferred to Echo 600, a medical clearance unit for possible varicella exposure. The Echo 600 officer noticed DECEDENT's limp, and she informed him she hurt her ankle crossing the border.

**Response:** Defendant admits that Decedent was transferred to Echo 600 for a possible varicella exposure. Defendant lacks information sufficient to form a belief as to the remaining allegations in paragraph 21, and therefore denies them on that basis.

22. After a phone call between the RN and NP later that day, the NP ordered DECEDENT to take daily doses of ibuprofen and acetaminophen as keep-on-person medications. However, the EDC pharmacy was closed at this time, and the order was not processed, nor did the nursing staff retrieve the medications for DECEDENT from the overnight stock cabinet.

**Response:** Defendant lacks information sufficient to form a belief as to the allegations in paragraph 22, and therefore denies them on that basis.

23. On November 25, 2016, the day of DECEDENT's scheduled physical examination, the NP was too busy to conduct DECEDENT's physical examination in the Echo 600 unit. Later that morning, DECEDENT was moved to Bravo 300, a general population unit, after her varicella results came back negative. Despite her sprained ankle, DECEDENT was assigned to an upper bunk in the Bravo 300 unit. After DECEDENT had been moved to the general population unit, a pharmacy technician finally filled her prescription and attempted to deliver it to the quarantine unit Echo 600. When the technician did not find DECEDENT in the Echo 600 unit, he returned the medications to a pharmacy bin designated for later deliver; however, he never informed the nurse that the medications needed to be delivered. The pharmacy technician ended his shift early and closed the pharmacy.

**Response:** Defendant lacks information sufficient to form a belief as to the allegations in paragraph 23, and therefore denies them on that basis.

24.    On November 26, 2016, DECEDENT went to the medical unit because she was in pain.  An RN, not aided by an interpreter, checked her vitals and noticed she had a high pulse (120 beats per minute) and low oxygen saturation level (96%).  DECEDENT reported her pain level as a nine out of ten.  The RN subsequently notified the NP that DECEDENT needed to see a provider, but the NP was busy with other patients.  DECEDENT was told to go get lunch in the dining room.  DECEDENT's vitals were not re-checked upon her return to the clinic.

**Response:** Defendant admits decedent went to the medical unit on November 26, 2016.  Defendant admits an RN checked her vital signs and evaluated her ankle.  Defendant lacks information sufficient to form a belief as to the remaining allegations in paragraph 24, and therefore denies them on that basis.

25.    As DECEDENT waited to be seen by the NP, there was a shift change for the officers on duty.  During this process, DECEDENT's identification card was placed in the stack indicating she was part of the group of individuals who had been seen by a provider and were cleared to back to their unit.  The new officer on duty sent DECEDENT back to the Bravo 300 unit.  DECEDENT was never seen by a provider.  Later that day, the Bravo 300 officer reported to the Desk Officer that DECEDENT was crying and complaining of pain, and the Desk Officer agreed to contact medical.  The Desk Officer became distracted and never contacted medical after this conversation.

**Response:**    Defendant lacks information sufficient to form a belief as to the allegations in paragraph 25, and therefore denies them on that basis.

26.    On November 27, 2016, at 9:24 a.m., DECEDENT collapsed while in the yard for outdoor recreation period and experienced a seizure.  DECEDENT was said to be foaming at the mount and appeared to have urinated herself.  Four minutes later, at 9:28 a.m., the NP, followed by RN and LNP from INGENESIS, arrived on the scene and took DECEDENT's vitals, which showed a pulse of 130 beats per minute and a low oxygen saturation level of

- 9 -

95%. At 9:34 a.m., six minutes after DECEDENT's vitals were taken, EDC central control called 911. At 9:39 a.m., fifteen minutes after DECEDENT's seizure, the nurses took DECEDENT to the medical unit. DECEDENT had a second seizure while being transported to the medical unit. When DECEDENT and the nurses finally arrived at the medical unit, DECEDENT was put on oxygen. Her vitals at this time showed her oxygen saturation level was 76%. Sometime between 9:45 a.m. and 9:50 a.m., Eloy Fire District arrived and assumed care of DECEDENT. She was transported to Banner Casa Grande Medical Center's emergency department.

**Response:** Defendant admits decedent collapsed while in the yard on the morning of November 27, 2016. Defendant admits that decedent was attended to by an NP, RN, and LPN from Ingenesis and later transported to the medical unit. Defendant admits Decedent was transported by Eloy Fire District to the Banner Casa Grande Medical Center emergency department. Defendant lacks information sufficient to form a belief as to the remaining allegations in paragraph 26, and therefore denies them on that basis.

27. DECEDENT arrived at Banner Casa Grande Medical Center at 10:20 a.m. Over the course of the next fifty-seven minutes, DECEDENT coded and was resuscitated three times. At 11:17 a.m., DECEDENT was pronounced dead.

**Response:** Defendant admits that the medical records indicate that Banner Casa Grande Medical Center reported Decedent arriving at 10:21 a.m, and that the emergency department conducted standard code protocols. Defendant lacks information sufficient to form a belief as to the remaining allegations in paragraph 27, and therefore denies them on that basis.

28. An autopsy was performed. DECEDENT's death certificate listed her immediate cause of death as Pulmonary Embolism due to, or as a consequence of, deep vein thrombosis and the manner of death was accidental.

**Response:** Admits.

29. The Emergency Physician noted that DECEDENT's cardiac arrest was "very much in question" because she was so young and presumptively had no cardiac history.

- 10 -

**Response:**    Defendant denies the allegations in paragraph 29.  Defendant avers that the medical record states, "Because of the patient's arrest is very much in question.  The patient is young and presumptively has no cardiac history.  Our history is very limited as patient presented unresponsive and remained so.  There is no obvious risk factors for pulmonary embolism."

30.    The United States, INGENESIS and CORECIVIC knew that detainees must be properly fed, medically evaluated, and periodically checked for signs of medical trauma and emergency.  Defendants United States, INGENESIS, CORECIVIC, and their employees, agents, and assigns, knew that DECEDENT had not been properly fed or medically evaluated, and knew that DECEDENT was not being periodically checked on a sufficient basis.  They also had actual or constructive knowledge that DECEDENT was exhausted from having journeyed through the desert, that she was confined to a cell in which she had no medical care, that she suffered severe injuries and that she was in immediate need of medical treatment.  Despite their knowledge of DECEDENT's medical need and as a result of the United States, INGENESIS's, and CORECIVIC's failure to provide adequate medical care, United States and CORECIVIC failed to identify that DECEDENT was suffering from a severe medical emergency, and failed to timely summon medical aid and/or provide DECEDENT with medical aid.  As a further result, DECEDENT's heart stopped and efforts to resuscitate her were untimely and therefore unsuccessful, leading to her death.  Defendants UNITED STATES, INGENESIS, and CORECIVIC are directly liable for the denial of medical care to DECEDENT and for their integral participation and failure to intervene in the denial of medical care to DECEDENT.

**Response:** The allegations in paragraph 30 are conclusory, vague, and ambiguous, and no response is necessary.  To the extent the allegations in paragraph 30 are deemed factual allegations, they are denied.

31.    Pulmonary embolism and deep vein thrombosis can be caused by dehydration and extended sitting and/or lying down.  Following a harrowing journey through the desert, DECEDENT had been left in her cell without proper food, water, or medical care.

**Response:** The allegations contained in paragraph 31 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required. To the extent a response is required, Defendant denies.

32. Through a series of acts and omissions, DEFENDANTS ignored DECEDENT's medical needs, failed to observe her or check on her, and failed to administer medical care to her.

**Response:** Defendant Denies.

33. DEFENDANTS proximately caused DECEDENT's death through their acts and omissions, including unreasonable and deliberately indifferent denial of medical care, unreasonable and deliberately indifferent conditions of confinement, and negligence.

**Response:** Defendant Denies.

34. DEFENDANT acted, allowed others to act, omitted to take obligated actions, condoned, failed to prevent, or otherwise engaged in conduct that ultimately resulted in the wrongful death of DECEDENT.

**Response:** Defendant Denies.

35. Based on the applicable laws and regulations, Defendants had the duty to monitor and protect DECEDENT while she was in custody, and to ensure that she received necessary medical care.

**Response:** The allegations in paragraph 35 are vague and conclusory, and therefore do not require a response. To the extent a response is required, Defendant denies.

36. According to the death certificate, DECEDENT suffered pulmonary embolism and deep vein thrombosis. Her death was preventable because her symptoms should have been observed by United States, INGENESIS, and CORECIVIC staff, who should have responded with proper medical treatment. Since DECEDENT died from pulmonary embolism and deep vein thrombosis, DEFENDANTS are either improperly trained to observe and note the symptoms of pulmonary embolism and deep vein thrombosis, and that failure was a proximate cause of the DECEDENT's death, or, DEFENDANTS failed to make adequate observations

of the DECEDENT's symptoms, provide adequate medical care to treat those symptoms, and in so doing, proximately caused the DECEDENT's death.

**Response**:    The allegations contained in paragraph 36 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

37.    The failure of DEFENDANTS to timely report patients' symptoms and failure to medically evaluate DECEDENT caused the DECEDENT pre-death pain and suffering and were each a substantial factor in causing the DECEDENT'S death.

**Response:**    The allegations contained in paragraph 37 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

38.    The failure to preform timely and adequate checks on the DECEDENT while she was detained caused DECEDENT to suffer pre-death pain and suffering and was a proximate cause of the DECEDENT'S death.

**Response:**    The allegations contained in paragraph 38 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

39.    The placement of the DECEDENT in her detainee cell, without any proper prior or follow-up medical evaluation, and without any legitimate penal interest, violated DECEDENT'S human rights, caused her to suffer significant pre-death pain and suffering, and was a proximate cause of the DECEDENT'S death.

**Response:**    The allegations contained in paragraph 39 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

40.    United States, INGENESIS, and CORECIVIC knew or should have known that detainees who recently journeyed through the desert required immediate medical assessments, as well as proper food and water, but they each failed to take measures to ensure that United States, INGENESIS, and CORECIVIC staff were properly trained to perform

proper medical evaluations.  Defendants United States, INGENESIS, and CORECIVIC's failure to take any such measures to ensure the health and safety of the detainees resulted in the DECEDENT being left to die, and in this case, violated DECEDENT's human rights and were a substantial factor in causing her death.

**Response:**    The allegations contained in paragraph 40 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

41.    By failing to discipline, retrain, or terminate any of the involved United States, INGENESIS, or CORECIVIC staff, Defendants United States, INGENESIS, and CORECIVIC also ratified the failure to medically evaluate and treat DECEDENT causing her to suffer injuries and death.

**Response:**    The allegations contained in paragraph 41 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

42.    United States, INGENESIS, and CORECIVIC also knew or should have known that the failure to medically assess, care, and treat DECEDENT in this case was illegal and violated United States policy, but each failed to discipline, terminate, or retrain the employees responsible.  In so failing to act, United States, INGENESIS, and CORECIVIC ratified their employees' illegal and improper conduct in medically neglecting DECEDENT.

**Response:**    The allegations contained in paragraph 31 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

43.    United States, INGENESIS, and CORECIVIC also knew or should have known that their employees have, or had at the time of this incident, inadequate training regarding persons who are in need of medical care, and/or experiencing a medical emergency. Despite this knowledge, United States, INGENESIS, and CORECIVIC failed to take measures to ensure that Eloy Detention Center medical or custodial staff were adequately trained on the

medical care and treatment of detainees. This failure was the moving force behind the violation of DECEDENT's human rights and a substantial factor in causing the death of DECEDENT.

**Response:** The allegations contained in paragraph 43 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required. To the extent a response is required, Defendant denies.

44. United States, INGENESIS, and CORECIVIC further knew or should have known that Eloy Detention Center staff were routinely failing to make sufficient safety checks on detainees, as they failed to do in the case of DECEDENT; and that United States, INGENESIS, or CORECIVIC staff were not medically evaluating detainees during their confinement. Despite this knowledge, United States, INGENESIS, and CORECIVIC failed to properly train Eloy Detention Center staff on United States, INGENESIS, and CORECIVIC policies and the law, with respect to providing medical care to detainees, detainees' rights to medical care, and documenting medical care for inmates housed in the cells. Their failure to train and their ratification of illegal and unconstitutional practices were the moving force behind the violation of DECEDENT's human rights and a substantial factor in causing her death.

**Response:** The allegations contained in paragraph 44 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required. To the extent a response is required, Defendant denies.

## FIRST CLAIM FOR RELIEF

### FTCA – Negligence

### (Wrongful Death)

(MARIO RENE HIDALGO LOPEZ, an individual, and as successor-in-interest to decedent, RAQUEL EVANGELINA CALDERON DE HIDALGO, Plaintiff, vs. Defendant United States)

45. Plaintiff MARIO RENE HIDALGO LOPEZ brings this claim on behalf of himself and as successor-in-interest to the DECEDENT.

**Response:** Defendant lacks information sufficient to form a belief as to whether

Plaintiff is a successor-in-interest to the Decedent, but otherwise admits that Plaintiff is bringing a claim on behalf of himself.

46.    Plaintiff repeats and re-alleges each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

**Response:** Defendant hereby re-alleges and incorporates by this reference its responses to paragraphs 1 through 45 of the Complaint as if fully set forth herein

47.    Plaintiff alleges Defendant UNITED STATES OF AMERICA owed a duty of care to the DECEDENT while she was in custody at Eloy Detention Center. Defendant UNITED STATES OF AMERICA knew or should have known that the DECEDENT was injured from the time she arrived at Eloy Detention Center, and therefore, Defendant UNITED STATES OF AMERICA had a duty to take reasonable action to provide the DECEDENT with appropriate medical care.  Employees of Eloy Detention Center that came into contact with the DECEDENT prior to her death were employees of Defendant UNITED STATES OF AMERICA and were acting within the course and scope of their employment.

**Response:**    The allegations contained in paragraph 114 are conclusory, vague, and ambiguous and no response is necessary.  To the extent they may be deemed allegations of fact, they are denied.

48.    Based on information received from the ICE Office of Professional Responsibility External Reviews and Analysis Unit's Detainee Death Review, Plaintiff alleges the actions and inactions of Defendant UNITED STATES OF AMERICA were the direct and proximate causes of the DECEDENT's death.  These events include but are not limited to:

a.    the negligent failure to medically evaluate DECEDENT after her medical pre-screening while in ICE custody at Eloy Detention Center despite complaints of injury: DECEDENT underwent a medical pre-screening performed by an IHSC RN and designated as "Physical Examination – Complex," indicating she required a physical examination by a provider within twenty-four hours of arrival at the detention center.  After the pre-screening, the RN contacted the NP and told her about the DECEDENT's ankle injury but omitted the

level of pain she was in;

b.    the negligent failure to perform checks and the performance of negligent checks on DECEDENT while she was in ICE custody at Eloy Detention Center. DECEDENT was also transferred to Echo 600, a pending medical clearance unit, without notice to the RN who originally performed the medical pre-screening. As a result of the lack of notice, the RN had no concern for DECEDENT's ankle injury or pain levels. The RN chose to schedule DECEDENT for a provider appointment on November 25, 2016, two days after her original medical pre-screening;

c.    the negligent documentation of the DECEDENT'S medical status and well-being while she was in ICE Custody at Eloy Detention Center. Plaintiffs repeat and re-allege allegations set forth in Paragraphs 46 through 50(b). In the days between her arrival at Eloy Detention Center and her provider examination, DECEDENT was said to be limping and told an officer she had hurt her ankle crossing the border. On a phone call the evening of November 23, 2016, between the NP and RN, the NP prescribed Decedent with 800 mg of ibuprofen and 500 mg of acetaminophen for her pre-screening noted ailments. However, because it was 7:24pm, the Eloy Detention Pharmacy was closed, so the order was not processed. The nursing staff on-call did not get the medications from the overnight stock cabinet either. On November 25, 2016, DECEDENT was transferred to general population housing, but DECEDENT's physical examination that was supposed to be on November 24, 2016, was never rescheduled;

d.    the negligent failure to render timely medical aid to the Decedent when she was in a state of medical emergency and distress. DECEDENT's prescription for 800 mg ibuprofen and 500 mg acetaminophen was filled later in the day on November 25, 2016; however, it was never delivered to DECEDENT because no one in Eloy Detention Center notified the Pharmacy or the on-call technicians DECEDENT had been transferred again. The pharmacy technician on-call returned the prescribed medications to the bin without informing the NP on-call the medications still need to be delivered to the DECEDENT. The pharmacy technician then ended his shift early on November 25, 2016, and closed the pharmacy without

- 17 -

informing an NP DECEDENT was without her prescribed medication. On November 26, 2016, DECEDENT reported to the medical unit of her general population housing because she was in pain. The RN checked DECEDENT's vital signs, and she noted DECEDENT's pain level was a 9. Due to DECEDENT's concerning vital signs and high level of pain, she was asked to wait in the clinic for a provider evaluation. When the RN notified the NP DECEDENT needed to see a provider, the NP said he would see her after his higher priority patients;

e.    the negligent failure to observe, document, and treat her symptoms of seizures, leg injury, pain and discomfort, deep vein thrombosis and pulmonary embolism, which would have prevented her death.  After the NP on call on November 26, 2016 neglected to see DECEDENT prior to his higher priority patients, DECEDENT was permitted to go to the dining hall for lunch and walk on her ankle injury. After lunch, the security staff shifted; in the process, DECEDENT's identification card was allegedly inadvertently put in the wrong stack. As a result, DECEDENT was sent back to her housing unit instead of the clinic to be seen by the NP. While the housing unit officer noted DECEDENT was still crying and in pain, the officer was distracted and forgot to contact the medical center with this information. On November 27, 2016, DECEDENT exited the housing unit for the outdoor recreational period, and fell forward onto the ground, appearing to have a seizure;

f.    the negligent supervision of the staff responsible for ensuring the decedent's safety and care during her confinement at Eloy Detention Center; and

g.    the negligent training and failure to train Eloy Detention Center custodial and medical staff on the issues and topics set forth above in this complaint.

**Response:**    The allegations contained in paragraph 48 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

49.    As a direct and proximate result of Defendant UNITED STATES OF AMERICA's negligence, DECEDENT died and Plaintiff was deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will

continue to be so deprived for the remainder of his natural life. Plaintiff is also claiming funeral and burial expenses and a loss of financial support.

**Response:** The allegations contained in paragraph 49 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required. To the extent a response is required, Defendant denies.

50. Plaintiff seeks wrongful death and survival damages under this claim. Plaintiff was financially dependent on DECEDENT.

**Response:** The allegations contained in paragraph 44 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required. To the extent a response is required, Defendant denies.

## SECOND CLAIM FOR RELIEF

### Negligence

### (Wrongful Death)

(B.H., an individual, and as successor in interest to decedent, RAQUEL EVANGELINA CALDERON DE HIDALGO, and L.H., an individual, and as successor in interest of DECEDENT, by and through her guardian ad litem MARIO RENE HIDALGO LOPEZ, and MARIO RENE HIDALGO LOPEZ as successor in interest of DECEDENT, Plaintiffs, vs. Defendant CORECIVIC)

51. Plaintiffs repeat and re-allege each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

**Response:** Defendant hereby re-alleges and incorporates by this reference its responses to paragraphs 1 through 50 of the Complaint as if fully set forth herein.

52. Plaintiffs bring this claim on behalf of themselves and as successors-in-interest to DECEDENT.

**Response:** Defendant lacks information sufficient to form a belief as to whether Plaintiffs are successors-in-interest to decedent, and therefore denies those allegations on that basis. Defendant admits that Plaintiffs bring this claim on behalf of themselves.

53. Plaintiffs are informed and believe and based thereon allege that Defendant

- 19 -

CORECIVIC owed a duty of care to DECEDENT while she was in custody at Eloy Detention Center. Defendant CORECIVIC knew or should have known that Decedent was injured from the time she arrived at Eloy Detention Center, and therefore Defendant CORECIVIC had a duty to take reasonable action to provide DECEDENT with appropriate medical care until she could be cared for by others.

**Response:**     The allegations contained in paragraph 53 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

54.     Plaintiffs are informed and believe and based thereon allege that Defendant CORECIVIC failed to take reasonable action to provide medical care to DECEDENT. Defendant CORECIVIC's acts and omissions directly and proximately caused damages to Plaintiffs, and but for these acts and omissions, DECEDENT would not have died on November 27, 2016.

**Response:**     The allegations contained in paragraph 54 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

55.     Plaintiffs are informed and believe and based thereon allege that the negligent acts and omissions of Defendant CORECIVIC, which directly and proximately caused DECEDENT's death, include but are not limited to:

a.     the negligent failure to ensure that a medical provider saw DECEDENT before she left the intake area after a Registered Nurse designated DECEDENT as "priority one (PRI-1)," indicating that DECEDENT needed medical evaluation by a provider before departing to housing;

b.     the negligent failure to provide DECEDENT with a wheelchair, crutches, walker, or other ambulatory aid even after a housing unit officer observed DECEDENT limping and DECEDENT informed a housing unit officer that she had hurt her ankle while crossing the border;

c.      the negligent failure to ensure that DECEDENT's appointment with a medical provider was re-scheduled before transporting her out of quarantine housing;

d.      the negligent assignment of DECEDENT to an upper bunk, rather than a lower bunk more accessible to DECEDENT in her condition, in the general housing unit;

e.      the negligent documentation of DECEDENT's whereabouts in the housing unit, resulting in her prescribed medication never reaching her;

f.      the negligent placement on November 26, 2016, of DECEDENT's identification card in a pile with identification cards belonging to detainees authorized to return to their housing units, rather than in the pile with the identification cards of detainees still waiting to be seen by medical staff; and

g.      the negligent failure on November 26, 2016, by the housing unit officers in DECEDENT's housing unit to contact medical staff and return her to the clinic after DECEDENT informed them that she had not been treated by medical staff and was still in pain.

**Response:**     The allegations contained in paragraph 55 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

56.      As a direct and proximate result of the acts and omissions of Defendant CORECIVIC, Plaintiffs, and each of them, have suffered damages, including, but not limited to, loss of earnings, loss of enjoyment of life, pain and suffering, emotional distress, attorneys' fees and costs of suit, other pecuniary losses not yet ascertained, and the loss of the love, affection, society, support, and companionship of DECEDENT.

**Response:**     The allegations contained in paragraph 56 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

57.      The conduct of Defendant CORECIVIC was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of the PLAINTIFFS and DECEDENT, entitling the Plaintiffs, individually and as successors-in-interest to DECEDENT,

- 21 -

to an award of exemplary damages.

**Response:** The allegations contained in paragraph 57 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required. To the extent a response is required, Defendant denies.

58. Plaintiffs seek wrongful death and survival damages under this claim. PLAINTIFFS also seek costs, interest and attorneys' fees.

**Response:** The allegations contained in paragraph 58 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required. To the extent a response is required, Defendant denies.

## THIRD CLAIM FOR RELIEF

### Negligence

### (Wrongful Death)

(B.H.B.H., an individual, and as successor in interest to decedent, RAQUEL EVANGELINA CALDERON DE HIDALGO, and L.H., an individual and as successor in interest of DECEDENT, by and through her guardian ad litem MARIO RENE HIDALGO LOPEZ, and MARIO RENE HIDALGO LOPEZ, as successor in interest of DECEDENT, Plaintiffs, vs. Defendant INGENESIS)

59. Plaintiffs repeat and re-allege each and every foregoing allegation and paragraph set forth above with the same force and effect as if fully set forth herein.

**Response:** Defendant hereby re-alleges and incorporates by this reference its responses to paragraphs 1 through 58 of the Complaint as if fully set forth herein.

60. Plaintiffs bring this claim on behalf of themselves and as successors in interest to DECEDENT.

**Response:** Defendant lacks information sufficient to form a belief as to whether Plaintiffs are successors-in-interest to decedent, and therefore denies those allegations on that basis. Defendant admits that Plaintiffs are bringing this claim on behalf of themselves.

61. Plaintiffs are informed and believe and based thereon allege that Defendant INGENESIS owed DECEDENT a duty of care to decedent while providing her with medical

- 22 -

care at Eloy Detention Center.

**Response:**    The allegations contained in paragraph 61 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

62.    Plaintiffs are informed and believe and based thereon allege that Defendant INGENESIS failed to provide DECEDENT reasonable and appropriate medical care while she was at Eloy Detention Center. Defendant INGENESIS's acts and omissions directly and proximately caused damages to Plaintiffs, and but for these acts and omissions, DECEDENT would not have died on November 27, 2016.

**Response**:    The allegations contained in paragraph 62 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

63.    Plaintiffs are informed and believe and based thereon allege that the negligent acts and omissions of Defendant INGENESIS, which directly and proximately caused DECEDENT's death, include but are not limited to:

a.    the negligent failure to issue to DECEDENT or otherwise indicate that DECEDENT needed a lower bunk or a wheelchair, crutches, walker, or other ambulatory aid despite knowing that DECEDENT had a twisted ankle that caused her pain when she walked on it;

b.    the negligent failure to schedule DECEDENT an appointment with a provider within 24 hours of the completion of DECEDENT's intake screening at 2:50 p.m. on November 23, 2016;

c.    the negligent failure to retrieve and give DECEDENT her prescribed keep-on-person medication on November 23, 2016, even though the nursing staff had access to the overnight stock cabinet at that time;

d.    the negligent failure to re-schedule DECEDENT's physical examination after it was determined on November 24, 2016, that she was not infected with varicella and would

no longer need to be quarantined;

e.    the negligent failure to use an interpreter to communicate with DECEDENT when she came to the medical unit on November 26, 2016; and

f.    the negligent failure to attempt to locate or find the DECEDENT to complete her medical evaluation on November 26, 2016, after she was erroneously sent back to the housing unit, even though the medical unit staff knew that DECEDENT had reported to the medical unit on her own accord that morning; that she did not receive her scheduled physical examination on November 25, 2016; that she had recently been hospitalized and diagnosed with an ankle sprain, soft tissue knee contusion, and headache pain; and that she was reporting a pain level of nine out of ten.

**Response**:    The allegations contained in paragraph 63 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

64.    As a direct and proximate result of the acts and omissions of Defendant INGENESIS, Plaintiffs, and each of them, have suffered damages, including, but not limited to, loss of earnings, loss of enjoyment of life, pain and suffering, emotional distress, attorneys' fees and costs of suit, other pecuniary losses not yet ascertained, and the loss of the love, affection, society, support, and companionship of DECEDENT.

**Response:**    The allegations contained in paragraph 64 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

65.    The conduct of Defendant INGENESIS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of the Plaintiffs and DECEDENT, entitling the Plaintiffs, individually and as successors-in-interest to DECEDENT, to an award of exemplary damages.

**Response:**    The allegations contained in paragraph 65 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is

required.  To the extent a response is required, Defendant denies.

66.    Plaintiffs seek wrongful death and survival damages under this claim. Plaintiffs also seek costs, interest, and attorneys' fees.

**Response:**    The allegations contained in paragraph 66 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

### FOURTH CLAIM FOR RELIEF

**Deliberate Indifference to Conditions of Confinement and Denial of Medical Care**
(B.H., an individual, and as successor in interest to decedent, RAQUEL EVANGELINA CALDERON DE HIDALGO, and L.H., an individual, and as successor in interest to DECEDENT, by and through her guardian ad litem MARIO RENE HIDALGO LOPEZ, and MARIO RENE HIDALGO LOPEZ as successor in interest to DECEDENT, Plaintiffs, vs. Defendant

INGENESIS; and DOES 1 through 10, inclusive.)

67.    Plaintiffs repeat and re-allege each and every foregoing allegation and paragraph with the same force and effect as if fully set forth herein.

**Response:** Defendant hereby re-alleges and incorporates by this reference its responses to paragraphs 1 through 66 of the Complaint as if fully set forth herein.

68.    At the time of her death, DECEDENT was either an arrestee or a pretrial detainee.  Defendants had a duty to provide DECEDENT with medical care and treatment. Defendants were deliberately indifferent to their duty and to DECEDENT's medical condition. Defendants acted under the color of state law as providers of medical care and engaged in conduct that was the proximate cause of a violation of DECEDENT's rights under the Eighth and Fourteenth Amendments to the Constitution of the United States of America, including but not limited to her right to adequate medical treatment and adequate conditions of confinement by: failing to have DECEDENT medically evaluated; failing to adequately check on her; failing to perform adequate checks (and in some instances, any checks) on her; failing to observe and note her signs and symptoms of her leg injuries, dehydration, seizures,

pulmonary embolism, and deep vein thrombosis; failing to timely provide and summon medical aid when she was in a state of medical distress. Despite DECEDENT being designated as needing a physical examination by a provider within 24 hours, she never received her full examination. DEFENDANTS knew that DECEDENT needed medical assistance, yet they consistently left her without medical attention or necessary pharmaceuticals due to indifference to her pain and medical needs.

**Response:** The allegations contained in paragraph 68 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required. To the extent a response is required, Defendant denies.

69. As a result, DECEDENT suffered extreme the loss of her life and the loss of enjoyment of her life. She also suffered a loss of earning capacity.

**Response:** The allegations contained in paragraph 69 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required. To the extent a response is required, Defendant denies.

70. Defendants are liable for DECEDENT's injuries because they were an integral participant and/or because they acted with deliberate indifference in failing to intervene to prevent the violation of DECEDENT's rights.

**Response:** The allegations contained in paragraph 70 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required. To the extent a response is required, Defendant denies.

71. Plaintiffs MARIO RENE HIDALGO LOPEZ, L.H., and B.H. have been denied the companionship of their wife and mother, respectively.

**Response:** The allegations contained in paragraph 71 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required. To the extent a response is required, Defendant denies.

72. Plaintiffs MARIO RENE HIDALGO LOPEZ, L.H., and B.H. bring this claim as successors-in-interest to the DECEDENT, and seek survival damages for the violation of

DECEDENT's rights.

**Response:**   The allegations contained in paragraph 72 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

73.   Plaintiffs also seek costs, interest, and attorneys' fees under this claim.

**Response:**   The allegations contained in paragraph 54 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

74.   The conduct of Defendants was malicious, wanton, oppressive, and accomplished with deliberate indifference to the rights of the Plaintiffs and DECEDENT, entitling the Plaintiffs, individually and as successors-in-interest to DECEDENT, to an award of exemplary damages.

**Response:** The allegations contained in paragraph 74 constitute statements or conclusions of law and Plaintiffs' characterization of their case, to which no response is required.  To the extent a response is required, Defendant denies.

### Plaintiffs' Demand for Relief

Defendant denies that Plaintiffs are entitled to the relief set forth in paragraphs a-g, or to any relief whatsoever.

### Affirmative Defenses

Defendant denies all allegations of the Complaint, including prayers for relief, not expressly admitted in the Answer.  Defendant avers the following defenses:

1.   The Court lacks jurisdiction over the subject matter of this action.

2.   Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

3.   Defendant United States, through its employees and agents, acted with due care and diligence at all relevant times.

4.   No acts or omissions by the United States were the proximate cause of any injury to the Plaintiffs.

5.      Plaintiffs' recovery is barred or limited by the provisions of the Arizona law on comparative negligence.

6.      Plaintiffs' injuries, damages and losses, if any, were solely and proximately caused by the negligence, carelessness or recklessness of persons other than Defendant.

7.      Plaintiffs are not entitled to a jury trial.  Any action against the United States pursuant to 28 U.S.C. § 1345 shall be tried by the court without a jury.

8.      The Court only has jurisdiction over claims that Plaintiffs exhausted at the administrative level.

9.      Plaintiffs' recovery is limited to the amount that was sought administratively. 28 U.S.C. § 2675(b).

10.     Plaintiffs' recovery is limited to the damages recoverable under the Federal Tort Claims Act.

11.     Pursuant to 28 U.S.C. § 2412(d)(1)(A), Plaintiffs cannot recover attorney's fees against the United States.

12.     Pursuant to 28 U.S.C. § 2674, Plaintiff' is prohibited from recovering any amount of pre-judgment interest or punitive damages against Defendant.

13.     Any judgment received by Plaintiffs must be reduced by those amounts that have been or will, with reasonable certainty, replace or indemnify the Plaintiffs, in whole or in part, for any past or future claimed economic loss, from any collateral source.

14.     The Estate of Raquel Evangelina Calderon de Hidalgo is the only proper party to bring claims for wrongful death under Arizona law.  To the extent that Plaintiffs do not have authority to act on behalf of the estate, this case is subject to dismissal for failure to be prosecuted in the name of the proper party Plaintiff.

WHEREFORE, having fully answered Plaintiffs' Third Amended Complaint, Defendant United States of America prays that Plaintiffs' Third Amended Complaint be dismissed with prejudice or, in the alternative, judgment be entered for the United States, that Plaintiffs' be denied any and all relief, that the United States be granted such other further relief as the Court deems appropriate.

Respectfully submitted this 24th day of February, 2020.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/ Anne E. Nelson*
ANNE E. NELSON
Assistant U.S. Attorney
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2020, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing, which will send notification of such filing to the following CM/ECF registrants:

Law Offices of Scott D. Hughes
Scott D. Hughes
620 Newport Center Drive, Suite 1100
Newport Beach, CA 92660

Alford Law, PLLC
Elliot Alford
3 N. Leroux Street, Suite 200
Flagstaff, AZ 86001

Struck Love Bojanowski & Acedo, PLC
Daniel Struck
Rachel Love
Dana Keene
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

*/s Anne E. Nelson*
Assistant U.S. Attorney